UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert T. Quasius,

       Plaintiff,

v.                                                                                         Civil No. 08-575 (JNE/JJG)
                                                                                           ORDER
The Schwan Food Company and
Schwan's Global Supply Chain, Inc., a
division of The Schwan Food Company,

       Defendants.

---

Andrea F. Rubenstein, Esq., Schaefer Law Firm, LLC, appeared for Plaintiff Robert T. Quasius.

Kurt J. Erickson, Esq., Jackson Lewis LLP, appeared for Defendants The Schwan Food Company and Schwan's Global Supply Chain, Inc.

---

Robert T. Quasius brings this action against The Schwan Food Company (Food Company) and Schwan's Global Supply Chain, Inc. (Global), alleging violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (2000), and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2006). The case is before the Court on Defendants' motion for dismissal, for judgment on the pleadings, or alternatively, for partial summary judgment, and for sanctions. For the reasons set forth below, the Court dismisses Quasius's MHRA claims against Defendants. The Court also dismisses Quasius's ADA claims against Defendants to the extent they are based on discrete acts that occurred before September 17, 2005. The Court denies Defendants' motion for sanctions.

**I.     BACKGROUND**

Quasius worked for Global as a packaging engineer manager from June 28, 2004, until his termination on March 29, 2006. Quasius alleges that he is disabled because of an asthma condition. Quasius contends that Defendants discriminated against him because of this condition

1

and denied his requests for accommodation. He also claims that his termination was retaliation for his complaints about Defendants' alleged discrimination.

Quasius filled out a Minnesota Department of Human Rights (MDHR) "Employment Discrimination Questionnaire" on February 24, 2006, listing as his employer "Schwan's Global Supply Chain, Inc., div. of the Schwan Food Company, Inc." On July 14, 2006, a charge of discrimination naming "The Schwan Food Company" as the respondent was filed with the MDHR. The description section of the charge stated that Quasius "worked for Schwan's Global Supply Chain, Inc., a division of the Respondent's company."

On August 24, 2006, counsel for the Food Company sent a letter to the MDHR arguing that the Food Company was not Quasius's employer. As they are in this suit, the Food Company and Global were represented by the same counsel in the MDHR proceeding. On October 2, 2006, Quasius sent a responsive letter to the MDHR arguing that the charge should include both the Food Company and Global as a joint employer and should name both entities as respondents. In an affidavit filed in support of his response to this motion, Quasius claims that the MDHR insisted that he sign an amended charge naming Global as the respondent. On December 13, 2006, an amended charge was docketed with the MDHR naming "Schwan's Global Supply Chain, Inc." as respondent and striking through the phrase "a division of the Respondent's company" in the description section. Quasius claims in his affidavit that he signed the amended charge because it appeared he had no other option. The MDHR found no probable cause supported Quasius's discrimination claim. He received his right-to-sue letter from the MDHR on January 14, 2008. Quasius appealed the MDHR's decision on January 28, 2008, but the MDHR rejected his appeal as untimely.

In addition to the MDHR charge, a parallel charge was filed with the Equal Employment Opportunity Commission (EEOC). The record does not indicate which entity was originally

2

named as the respondent in the EEOC charge or whether the EEOC charge was amended to name Global as the respondent when the MDHR charge was amended. The record does indicate that Quasius sent a copy of his letter arguing that the charge should name both the Food Company and Global as respondents to the Milwaukee EEOC office. The EEOC adopted the MDHR's findings and issued a right-to-sue letter on February 22, 2008. The EEOC sent a copy of this letter to Global, but not to the Food Company.

Quasius filed his Complaint on February 28, 2008, and served Defendants on June 4, 2008. Defendants filed this motion on August 13, 2008, arguing that Quasius's MHRA claims are time-barred, that Quasius's ADA and MHRA claims against the Food Company should be dismissed because Quasius did not exhaust his administrative remedies against the Food Company, and that Quasius's ADA claims against Global are partially time-barred. Defendants also seek attorney fees under the ADA, the MHRA, and 28 U.S.C. § 1927 (2006).

## II.   DISCUSSION

In support of their respective positions, the parties presented matters outside the pleadings. The parties agree that Defendants' motion should be treated as a motion for partial summary judgment.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co.*

3

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and draw any inferences in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.     MHRA Claims

#### 1.     MHRA Claims Against Global

Global argues that Quasius's MHRA claims against it are time-barred. Under the MHRA, a plaintiff who timely files an administrative charge with the MDHR "may bring a civil action . . . within 45 days after receipt of notice that the commissioner has dismissed a charge . . . because the commissioner has determined that there is no probable cause to credit the allegations." Minn. Stat. § 363A.33, subd. 1(1). Global contends that Quasius's MHRA claims are time-barred because Quasius failed to serve Global within forty-five days after he received notice of the MDHR's dismissal of his charge. Quasius responds that his MHRA claims against Global are not time-barred because he filed this action on February 28, 2008, forty-five days after he received the MDHR's notice of dismissal on January 14, 2008. The issue before the Court therefore is whether a party "brings" a civil action under the MHRA by filing or by serving a complaint.

Resolution of this issue turns on whether Rule 3.01 of the Minnesota Rules of Civil Procedure or Rule 3 of the Federal Rules of Civil Procedure applies. Rule 3.01 of the Minnesota Rules of Civil Procedure provides that an action is commenced upon service of a summons and complaint. *See Appletree Square I, Ltd. v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994); *Ochs v. Streater, Inc.*, 568 N.W.2d 858, 859-60 (Minn. Ct. App. 1997). Rule 3 of the Federal Rules of Civil Procedure provides that "[a] civil action is commenced by filing a complaint with the court." If the federal rule applies, Quasius's MHRA claims against Global

are not time-barred; if the state rule applies, Quasius's MHRA claims against Global are time-barred.

The Court concludes that the Eighth Circuit's decision in *Appletree* governs the commencement of Quasius's MHRA claims.  One issue[1] decided in *Appletree* was whether a state law asbestos claim was eligible for revival under Minnesota's asbestos revival statute, which provides that "[a]n asbestos action revived or extended under this subdivision may be begun before July 1, 1990."  29 F.3d at 1286 (citing and quoting Minn. Stat. § 541.22, subd. 2 (West 1994)).  Appletree filed its complaint in federal district court on June 29, 1990, but did not serve W.R. Grace until July 3, 1990.  Appletree argued that Rule 3 of the Federal Rules of Civil Procedure, not Rule 3.01 of the Minnesota Rules of Civil Procedure, should control commencement of Appletree's asbestos action.  The Eighth Circuit rejected this argument:

> In *Walker v. Armco Steel Corp.*, 446 U.S. 740 [(1980)], the Supreme Court held that Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations.  The Court stated:
>
>> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.

*Appletree*, 29 F.3d at 1286 (quotation marks and citations omitted).

Quasius suggests that the federal rule should control commencement of his MHRA claims because the Court has supplemental jurisdiction over these claims, rather than diversity jurisdiction.  The Eighth Circuit rejected a similar argument in *Appletree*:

---

[1]  Quasius asserts that the issue in *Appletree* was the date on which the statute of limitations began to run on Appletree's asbestos claim.  The Eighth Circuit did decide this issue, *Appletree*, 29 F.3d at 1284-86, but also considered the application of Minnesota's asbestos revival statute and whether the federal or state rule governed commencement of the asbestos claim, *id.* at 1286.  The Court relies on this portion of *Appletree*.

5

> Appletree attempts to distinguish *Walker* on the ground that jurisdiction in that case was based on diversity of citizenship and jurisdiction in the present case is based on a federal law (RICO). We note that Appletree pleaded both diversity and federal question jurisdiction in its complaint and that both bases for jurisdiction exist. In any event, we conclude that the rationale of *Walker* does not change solely because of the fortuity that Appletree pleaded a federal claim along with state claims. [I]t is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law. The state law claims would be barred in state court; *Walker* dictates that they should not be allowed to proceed in federal court.

*Appletree*, 29 F.3d at 1286 (quotation marks and citations omitted). For the purposes of his MHRA claims, Quasius brought this action when he served his summons and complaint on Global on June 4, 2008, well after the forty-five days permitted under the MHRA. Quasius's MHRA claims against Global are time-barred.

    **2.**    **MHRA Claims Against the Food Company**

The Food Company asserts that Quasius's MHRA claims against it should be dismissed because the claims are time-barred and because Quasius failed to exhaust his administrative remedies against the Food Company. The Food Company bases its exhaustion argument on the removal of the Food Company as a respondent from the MDHR charge and the fact that the MDHR right-to-sue letter did not name the Food Company.

The Court first turns to whether Quasius's claims against the Food Company are time-barred. If the MDHR right-to-sue letter applies to the Food Company because the charge initially named it as respondent, Quasius had forty-five days from receipt of the letter to bring an action against the Food Company. *See* Minn. Stat. § 363A.33, subd. 1(1). Under *Appletree*, Quasius did not bring this action against the Food Company until he served it on June 4, 2008.

Alternatively, if the MDHR right-to-sue letter was ineffective as to the Food Company due to its removal from the charge, Quasius had one year from the date of his termination to bring a civil action against the Food Company. *See* Minn. Stat. § 363A.28, subd. 3 ("A claim of

an unfair discriminatory practice must be brought as a civil action . . . within one year after the occurrence of the practice."). Quasius's termination occurred on March 29, 2006, more than a year before he served the Food Company. Therefore, regardless of the effect of the amendment of Quasius's MDHR charge, his MHRA claims against the Food Company are time-barred.

**B.     ADA Claims**

    **1.     ADA Claims Against Global**

Global contends that Quasius's ADA claims are based on discrete acts and that they are time-barred to the extent they are based on discrete acts that occurred more than 300 days before Quasius filed his charge. Quasius responds that his ADA claims are based on a continuing violation and are timely because the last discriminatory act—Quasius's termination—occurred within 300 days before he filed his charge.

The continuing violation doctrine "tolls the statute of limitations in situations where a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as least one incident of discrimination occurred within the limitations period." *Treanor v. MCI Telecomms. Corp.*, 200 F.3d 570, 573 (8th Cir. 2000). Discrete discriminatory acts, however, are not encompassed within the continuing violation doctrine and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002); *see also Taxi Connection v. Dakota, Minn., & E. R.R. Corp.*, 513 F.3d 823, 825 (8th Cir. 2008). Thus, whether Quasius's ADA claims are partially time-barred depends on whether the alleged discriminatory acts form a continuing violation or are discrete discriminatory acts.

As set forth by the Supreme Court in *Morgan*, a discrete discriminatory act constitutes a "separate actionable 'unlawful employment practice'" and is easy to identify. 536 U.S. at 114. Termination, failure to promote, denial of transfer, and refusal to hire are examples of discrete

7

discriminatory acts. *Id.* A hostile work environment, which by its very nature involves repeated conduct, "cannot be said to occur on any particular day" because "[i]t occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115. The entire time period of the hostile work environment may be considered for purposes of liability so long as an act contributing to the claim occurs within the filing period. *Id.* at 117.

Quasius argues that Defendants "effectively denied him accommodation over time" by denying his requests for accommodation and refusing to engage in an interactive process. According to Quasius, Defendants' conduct is "far more analogous to a continuing violation [than] a discrete act." This argument is unpersuasive because employees feel the effects of indisputably discrete acts, such a failure to promote or denial of transfer, over time. The existence of an on-going effect on an employee does not convert a discrete act into a continuing violation. The Court must focus on the time of the alleged discriminatory acts, not "the time at which the consequences of the acts became most painful." *Taxi Connection*, 513 F.3d at 825; *see Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) (holding rejection of proposed religious accommodation does not give rise to continuing violation even though effect of rejection is felt so long as the employee remains employed).

Although the Eighth Circuit has not decided whether a denial of a request for accommodation is a discrete act, other circuits have found such a denial to be a discrete act in similar contexts. *See, e.g.*, *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (holding denial of employee's request for an accommodation for a disability under the Rehabilitation Act was a discrete act); *Elmenayer*, 318 F.3d at 134-35 (holding denial of request for religious accommodation was a discrete act). The Court finds the reasoning in these decisions persuasive. A denial of a request for accommodation, like a failure to promote, is easily identifiable and can

occur in a single action. A denial of a request for reasonable accommodation can constitute an actionable unlawful employment practice. *See* 42 U.S.C. § 12112(b)(5)(A). The Court therefore concludes that a denial of a request for accommodation is a discrete act. *See Morgan*, 536 U.S. at 114. Consequently, the continuing violation doctrine does not apply to a series of such denials, even if they are related. *See id.* at 114-15; *Szedlock v. Tenet*, 61 F. App'x. 88, 93 (4th Cir. 2003) (series of denials of requests for accommodation does not constitute a continuing violation). Therefore, Quasius may base his ADA claims only on discrete acts occurring within the appropriate time period. *See Morgan*, 536 U.S. at 114.

Where a plaintiff has filed a charge alleging unlawful employment practices with a state agency, as Quasius did, the plaintiff must file the charge within 300 days from the date of the alleged discriminatory act. *See* 42 U.S.C. §§ 2000e-5(e)(1), 12117 (2000); *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005). Quasius filed his charge on July 14, 2006.[2] Three hundred days before July 14, 2006, is September 17, 2005.[3] Thus, to the extent Quasius's ADA claims against Global are based on discrete acts occurring before September 17, 2005, they are time-barred.[4] *See Morgan*, 536 U.S. at 114.

---

[2] For the purposes of this motion, Global assumes that Quasius's amended charge, filed on December 13, 2006, relates back to his initial charge. The Court therefore calculates the cut-off date based on the date Quasius filed his initial charge.

[3] Global incorrectly calculates the cut-off date as May 9, 2005. The correct calculation is to subtract 300 days from the date Quasius filed his charge. *See Morgan*, 536 U.S. at 114 (only acts that occurred within the 300 days before the date plaintiff filed his charge are actionable).

[4] Quasius may still use discrete acts occurring before September 17, 2005, as "background evidence in support of" his timely filed claims. *See Morgan*, 536 U.S. at 113.

9

### 2. ADA Claims Against the Food Company

#### a. *Exhaustion of Remedies*

The Food Company contends that Quasius's ADA claims should be dismissed because Quasius failed to exhaust his administrative remedies against the Food Company.[5] Quasius responds that he may proceed against the Food Company because the Food Company and Global are a single integrated enterprise.

Generally, a plaintiff must file an EEOC charge against a defendant before suing the defendant for violating Title I of the ADA. *See* 42 U.S.C. § 12117(a) (incorporating Title VII's "powers, remedies, and procedures," including the exhaustion requirement). Despite this general requirement, "omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action." *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985). An action may proceed against a party not named in an EEOC charge (1) "where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings," or (2) "where there is sufficient identity of interest between the respondent and the [unnamed party] to satisfy the intention . . . that the [unnamed party] have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Id.*

With respect to the first exception, it is unclear from the record whether the original charge filed with the EEOC named the Food Company or Global as the respondent. If the EEOC charge originally named the Food Company, then the Food Company is not an "unnamed party." The Food Company argues that, even if it was named, Quasius's amendment of the MDHR

---

[5] The Food Company frames its exhaustion argument as an issue of subject matter jurisdiction. Failure to exhaust administrative remedies is an affirmative defense that the Food Company must prove. *See Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam). Therefore, the Court has subject matter jurisdiction over Quasius's claims against the Food Company.

charge "creates an expectation" that the Food Company will not be named in the lawsuit. This argument is unpersuasive. The Food Company should have anticipated that Quasius would name it as a defendant in a lawsuit regardless of any amendment, particularly in light of the fact that it was the Food Company's argument that prompted the amendment of the MDHR charge—over Quasius's objection.

Even if the removal of the Food Company from the charge converted the Food Company into an "unnamed party" or if it was never named on the EEOC charge, Quasius has raised a genuine issue of material fact as to whether the Food Company had actual notice of and the opportunity to participate in conciliation proceedings because the same attorney represented the Food Company and Global before the MDHR and the EEOC. *See Schiele v. Charles Vogel Mfg. Co., Inc.*, 787 F. Supp. 1541, 1547 (D. Minn. 1992). Therefore, there is a genuine issue of material fact as to whether the first exception applies to the Food Company.

With respect to the second exception, the failure to exhaust administrative remedies against the Food Company will not foreclose Quasius's ADA claims if there is a sufficient identity of interest between the Food Company and Global. *See Greenwood*, 778 F.2d at 451. For the purposes of notice and conciliation, there is a sufficient identity of interest when the named and unnamed organizations are a single employer. *See Sedlacek v. Hach*, 752 F.2d 333, 335-36 (8th Cir. 1985). Courts examine various factors to determine whether organizations are a single employer, including: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1184 (8th Cir. 1998).

Here, the record contains evidence demonstrating that there is a subsidiary/parent relationship between The Food Company and Global and that the two entities shared offices. A Senior Director of Human Resources for the Food Company worked with Quasius's supervisor

on Quasius's improvement plan. The benefits administrator for the Food Company requested and received a medical evaluation of Quasius. In several e-mails, Quasius's supervisor identified himself as an employee of the Food Company. Finally, Quasius's job description displays a "The Schwan Food Company" logo and includes a statement that it is the "policy of The Schwan Food Company to recruit, hire, assign and promote employees." For these reasons, there is a genuine issue of material fact as to whether the Food Company and Global are a single employer for purposes of the notice and conciliation requirements of Title VII as incorporated in the ADA and whether those requirements were fulfilled for purposes of Quasius's claims against the Food Company. Therefore, even if Quasius failed to exhaust his administrative remedies against the Food Company, this failure will not foreclose his ADA claims.

### b.    *Estoppel, Admissions, and Election of Remedies*

The Food Company raises three additional arguments concerning whether it was Quasius's employer. First, it argues that amending the MDHR charge estops Quasius from arguing that the Food Company is his employer. In support of this argument, the Food Company cites several cases involving affidavits or testimony containing unexplained and sudden departures from deposition testimony used to artificially create a fact issue in response to a motion for summary judgment. These cases are inapposite. Quasius states in his affidavit that he did not want to sign the amended MDHR charge and only did so because he believed he had no other option. This statement is consistent with the record, including his letter arguing that his charge should name both the Food Company and Global as respondents. Quasius's decision to sign the amended MDHR charge does not estop him from suing the Food Company.

Second, the Food Company argues in its reply brief that Quasius failed to timely respond to several requests for admission. In particular, Quasius failed to respond to a request stating: "[f]or your employment that you describe in your Complaint, admit that you were not employed

12

by [the Food Company.]" Failing to timely respond to a request for admission results in the matter being deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). Quasius has not moved to withdraw or amend his response pursuant to Federal Rule of Civil Procedure 36(b).

It is evident from Quasius's memorandum in opposition to summary judgment and counsel's arguments at the hearing that Quasius claims he was employed by the Food Company. Whether an employment relationship existed between Quasius and the Food Company is central to Quasius's ADA claims against the Food Company. Although the Court is permitted to grant summary judgment on the basis of matters deemed admitted, the Court is not required to do so. *See Kosta v. Connolly*, 709 F. Supp. 592, 594-95 (E.D. Pa. 1989); *Pleasant Hill Bank v. United States*, 60 F.R.D. 1, 2-3 (W.D. Mo. 1973).

Further, in seeking an admission as to the existence of an employment relationship between Quasius and the Food Company, the relevant request seeks admission of a legal conclusion. *See Birchem v. Knights of Columbus*, 116 F.3d 310, 312-13 (8th Cir. 1997). Requests for admissions of legal conclusions are inappropriate. *See Warnecke v. Scott*, 79 F. App'x. 5, 6 (5th Cir. 2003); *Lakehead Pipe Line Co., Inc. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997); 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2255 (2d ed. 1994). For these reasons, the Court declines to grant summary judgment at this time on Quasius's ADA claims against the Food Company on the basis of his failure to timely respond to Defendants' requests for admission. Should Quasius seek to amend or withdraw his responses to these requests, Quasius shall make such a motion before the magistrate judge within 30 days of this order.

Finally, the Food Company contends that the doctrine of election of remedies prohibits Quasius from naming the Food Company as a defendant in this suit. The Food Company cites no authority applying the doctrine of election of remedies to the naming of a respondent in a

charge of discrimination. In the absence of any such authority, the Court declines to apply the doctrine of election of remedies to Quasius's ADA claims against the Food Company.

### c. *Partial Time-Barring*

The Food Company does not join in Global's argument that Quasius's ADA claims are partially time-barred. The Court may grant summary judgment sua sponte when the "party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir. 1995) (quotation marks omitted).

In their Answer, both defendants raised partial time-barring based on the 300-day limitation in the ADA as an affirmative defense. Quasius addressed the legal and factual arguments relating to the partial time-barring of his ADA claims in his response to Global's motion.[6] The Court concludes that Quasius was given sufficient advance notice that the Court would consider whether his ADA claims are partially time-barred and had an adequate opportunity to demonstrate why summary judgment should not be granted. *See id.* at 1049-50; *Furkin v. Smikun*, 237 F. App'x. 86, 90 (7th Cir. 2007) (affirming district court's sua sponte grant of summary judgment for non-moving defendant on statute of limitations grounds when moving defendant raised issue). Therefore, to the extent Quasius bases his ADA claims against the Food Company on discrete acts occurring before September 17, 2005, they are time-barred.

**C.   Sanctions**

Defendants seek sanctions in the form of attorney fees pursuant to the ADA, the MHRA, and 28 U.S.C. § 1927. The Court notes that Quasius's ADA claims against the Food Company

---

[6]   Portions of Quasius's response to Global's partial time-barring argument refer to "the defendants." Thus, Quasius may have directed his response to both Global and the Food Company.

and Global remain.  Therefore, the Court declines to rule on the availability or amount of attorney fees at this time.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for partial summary judgment and for sanctions [Docket No. 9] is GRANTED IN PART and DENIED IN PART.

2. The deadline for Quasius to bring a motion to withdraw or amend his responses to Defendants' requests for admissions is December 14, 2008.

3. Counts I-II of Quasius's Complaint [Docket No. 1] are DISMISSED WITH PREJUDICE to the extent they are based on discrete acts occurring before September 17, 2005.

4. Counts III-V of Quasius's Complaint [Docket No. 1] are DISMISSED WITH PREJUDICE.

Dated:  November 14, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge